UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR RAMOS, | Case No. 2:24-cv-01261-CSK |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR TERMINATING SANCTIONS |
| v. | |
| LESA MARIE GONZALEZ, et al., | (ECF No. 31) |
| Defendants. | |

On September 26, 2025, the Court granted Plaintiff Oscar Ramos's motion to compel (ECF No. 25) Defendant Lesa Marie Gonzalez, individually and dba Dave's Giant Hamburger, and Defendant Ellen Carol Gansberg to respond to Plaintiff's interrogatories, requests for admissions ("RFAs"), and requests for documents ("RFPs").[1] 9/26/2025 Order (ECF No. 27). The Court also awarded Plaintiff's expenses for making the motion to compel pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). 11/10/2025 Order (ECF No. 30). Plaintiff now moves for terminating sanctions based on Defendants' failure to comply with the Court's orders. (ECF No. 31.) Defendants did not file an opposition or response to the Motion. *See* Docket. For the reasons set forth

---

[1]  This case proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including the entry of judgment, pursuant to the consent of all parties. (ECF No. 16.)

1

below, the Court grants Plaintiff's Motion for terminating sanctions and enters default judgment against Defendants.

## I.      BACKGROUND

### A.      Factual Allegations

The Complaint alleges that Plaintiff is a physically disabled person who requires a wheelchair due to a catastrophic accident resulting in the amputation of his legs up to the hip. Compl. ¶ 6 (ECF No. 1). Defendants Lesa Marie Gonzalez and Ellen Carol Gansberg own and operate a business known as Dave's Giant Hamburger, located at 1055 N. Texas St., Fairfield, California (the "Property"). *Id.* ¶ 8. Plaintiff alleges that the Property, including its "access aisles and access routes," are public facilities. *Id.* ¶¶ 7, 11.

On February 7, 2024 and April 24, 2024, Plaintiff visited the Property to purchase food. *Id.* ¶ 12. Plaintiff alleges that on each of these occasions, Defendant failed to provide a properly accessible, designated parking space. *Id.* ¶¶ 4a, 13. Plaintiff alleges the parking space contained extremely faded paint, did not feature a properly spaced and designated access aisle, and lacked a proper tow-away sign. *Id.* Plaintiff also alleges that the outdoor dining seating was not wheelchair-accessible because the tables did not contain the proper clearance and designation. *Id.* ¶ 4b. Plaintiff alleges he personally encountered these architectural barriers each time he attempted to visit the Property. *Id.* ¶¶ 12, 13, 15. Plaintiff further alleges he was denied full and equal access to the Property, which caused him difficulty and embarrassment. *Id.* ¶¶ 4, 5, 17. Plaintiff, who lives in the area, plans to return and patronize the Property once the barriers are removed. *Id.* ¶ 14.

### B.      Procedural History

On April 30, 2024, Plaintiff initiated this action alleging the following four causes of action: (1) violation of the Americans with Disabilities Act of 1990 ("ADA") pursuant to 42 U.S.C. §§ 12101 *et seq.*; (2) violations of California Health & Safety Code §§ 19955 *et seq.*; (3) violation of the California Civil Rights Acts pursuant to California Civil Code

2

§§ 54, 54.1 and 54.3; and (4) violation of the California Unruh Civil Rights Act pursuant to California Civil Code §§ 51, 51.5, and 52. Compl. ¶¶ 18-71. On October 9, 2024, Defendants filed their answer. (ECF No. 12.) On January 28, 2025, the Court held an initial scheduling conference to discuss case deadlines. 1/28/2025 Minute Order (ECF No. 21). At the initial scheduling conference, the parties confirmed they had exchanged Rule 26 initial disclosures. 1/30/2025 Pretrial Scheduling Order ("PTSO") at 3 (ECF No. 22). On January 30, 2025, the Court issued a Pretrial Scheduling Order setting case deadlines, including a non-expert discovery deadline for September 30, 2025. *Id*. at 3, 11.

On July 8, 2025, Plaintiff served interrogatories, RFAs, and RFPs on Defendants. 12/15/2025 Declaration of Richard A. Mac Bride ¶ 4 (ECF No. 31-3). Responses to Plaintiff's discovery requests were due on or before August 13, 2025. *Id.* Because Defendants did not timely serve their written responses, Plaintiff began the meet and confer process by sending email and phone messages to Defendant's counsel on August 28, 2025, September 2, 2025, September 3, 2025, and September 5, 2025. *Id.* ¶ 5. Plaintiff requested on September 5, 2025 an informal discovery conference before the undersigned to address Defendants' failure to respond to discovery. *Id.* ¶ 6. Defense counsel was included in the request for an informal discovery conference. *Id.* After receiving availability for an informal discovery conference by Chambers' staff, Plaintiff provided his availability. *Id*. Defendants did not respond. *Id.*

On September 17, 2025, Plaintiff filed a motion to compel Defendants' response to Plaintiff's interrogatories, RFAs, and RFPs. (ECF No. 25.) Defendants never responded to the motion. *See* Docket. The Court granted Plaintiff's motion to compel on September 26, 2025. 9/26/2025 Order (ECF No. 27). Plaintiff's RFAs were deemed admitted, and Defendants were ordered to serve complete and full responses to Plaintiff's interrogatories without objection and to produce documents responsive to Plaintiff's RFPs without objection within fourteen days of the September 26, 2025 Order. *Id.* at 5, 7-8. Defendants were also ordered to file a written status report regarding their

compliance with the September 26, 2025 Order within 14 days of that Order's issuance. *Id.* at 8. Defendants have not filed the required status report. *See* Docket. In addition, on October 27, 2025, Plaintiff filed a status report indicating that Defendants have not served any discovery responses, in further violation of the Court's September 26, 2025 Order. 10/27/2025 Pl. Status Report (ECF No. 29).

In the Court's September 26, 2025 Order, Defendants were expressly warned that "[i]f Defendants fail to comply with court orders, or participate in discovery, Defendants may face serious sanctions, including entry of default judgment." 9/26/2026 Order at 5. The Court also warned that "[a] failure to timely respond by Defendant will be construed as a concession that there was no justification for Defendants' failure to respond to Plaintiff's discovery requests and as a non-opposition to the award of reasonable expenses under Rule 37(a)(5)(A)." *Id.* at 7. Because Plaintiff had not provided the Court with sufficient information to determine the amount of expenses if the Court were to make such an award pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), the Court ordered Plaintiff to submit his reasonable expenses, including attorney's fees, and provided Defendants with the opportunity to respond. *Id.* Although Defendants were provided with the opportunity to respond, they did not do so. *See* Docket. On November 10, 2025, the Court ordered Defendants to pay Plaintiff's reasonable expenses in the amount of $700. 11/10/2025 Order at 4 (ECF No. 30). In the Court's November 10, 2025 Order, the Court noted "[i]t appears that Defendants are not participating in the litigation." *Id.* The Court therefore ordered Plaintiff to file a status report as to how Plaintiff intended to proceed in this action, including whether he would move for sanctions for Defendants' alleged failures to comply with the Court's discovery order. *Id.* Plaintiff's status report was filed on December 15, 2025. 12/15/2025 Pl. Status Report (ECF No. 32). In his status report, Plaintiff stated that Defendants still have not filed a written status report pursuant to the Court's September 26, 2025 Order, have not served any responses to any discovery requests, have not paid Plaintiff's expenses pursuant to the Court's November 10, 2025 Order, and have not attempted to contact Plaintiff's counsel in any

4

way. *Id.*

That same day, December 15, 2025, Plaintiff filed this Motion for terminating sanctions, judgment, and attorney's fees. *See* Mot. Despite Local Rule 251(e)'s requirement that an opposition be filed within one week of the hearing, Defendants failed to do so. *See* E.D. Cal. Local Rule 251(e) (providing exception from Local Rule 251(c) Joint Statement re Discovery Disagreement when there is a "complete and total failure to respond to a discovery request or order"). Accordingly, on January 21, 2026, the Court vacated the January 27, 2026 hearing on Plaintiff's Motion and ordered Defendants to show cause, in writing within fourteen days, why the Court should not construe Defendants' failure to file a timely response as a non-opposition to the Motion. 1/21/2026 Minute Order (ECF No. 34). On February 11, 2026, the Court vacated the upcoming final pretrial conference set for March 10, 2026 and the bench trial set for April 6, 2026 in light of Plaintiff's pending Motion, noting Defendants still have not responded to the Motion or the Court's Order to Show Cause. 2/11/2026 Minute Order (ECF No. 35).

## II.    DISCUSSION

Plaintiff brings his Motion seeking terminating sanctions pursuant to Rule 37(b)(2)(A) for not obeying a discovery order. *See* Fed. R. Civ. P. 37(b)(2)(A) (providing sanctions for the failure "to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)…"). Plaintiff requests that the Court:  (i) grant default judgment against Defendants;[2] (ii) award Plaintiff $8,000.00 in statutory damages pursuant to the Unruh Act; (iii) award Plaintiff attorney's fees in the amount of $11,520.00, and costs in the amount of $3,099.50 (totaling $14,619.50 in attorney's fees and costs); and (iv) grant Plaintiff a permanent injunction requiring Defendants to provide the following:

A compliant designated parking space, path of travel in

---

[2]  A section of Plaintiff's Motion appears to be styled as a related motion for default judgment. *See* Mot. at 6-20. Nonetheless, the Court construes the Motion as a single motion for terminating sanctions under Federal Rule of Civil Procedure 37, rather than as a motion for default judgment under Federal Rule of Civil Procedure 55.

> [Defendants'] outdoor dining area, and dining seating, in compliance with the Americans With Disabilities Act ("ADA") and the United States Access Board ADA Accessibility Guidelines ("ADAAG").

Mot. at 20.

Defendants have not filed an opposition or otherwise responded to Plaintiff's Motion. *See* Docket. Defendants have not sought any extension of the Court's deadlines, including the deadline set by the Court's September 26, 2025 Order for Defendants to respond to Plaintiff's discovery requests, the deadline set by the same Order for Defendants to file a status report, the deadline set by the Court's November 10, 2025 Order for Defendants to pay Plaintiff's expenses in bringing the motion to compel, the filing deadlines to respond to the current Motion, or the deadline set by the Court's January 21, 2026 Order to Show Cause in writing why Defendants' failure to respond should not be construed as a non-opposition to the Motion.

### C.    Legal Standards

"The discovery process in theory should be cooperative and largely unsupervised by the district court. But when required disclosures aren't made or cooperation breaks down, Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosures or discovery." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). If such an order is issued, but the offending party fails to obey, "the court where the action is pending may issue further just orders," including:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

6

(vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A); *see Comput. Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004).

The choice of sanction, including default judgment, is within the discretion of the court. *Comput. Task*, 364 F.3d at 1115; *see also* E.D. Cal. Local Rule 110 (noting the failure of a party to comply with any local rule or order of the court may result in the imposition of "any and all sanctions authorized by statute or Rule or within the inherent power of the Court"). However, "a default judgment sanction is 'a harsh penalty imposed only in extreme circumstances.'" *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012) (quoting *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011)).

Only "willfulness, bad faith, or fault justify terminating sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (quotations omitted); *see also Comput. Task*, 364 F.3d at 1115. Wrongful intent or actual ill will is not required; rather, "[d]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Indus. Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (quotations omitted). Substantial and prejudicial obduracy may also constitute bad faith. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002). "A court may consider prior misconduct when weighing a subsequent sanction motion." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990).

Terminating sanctions may be appropriate even if disobedience of the court order is the fault of the party's attorney alone. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962); *see Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) ("Under this circuit's precedent, a client is ordinarily chargeable with his counsel's negligent acts."); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) (service on attorney constitutes notice to clients).

7

In the Ninth Circuit, upon a finding of "willfulness, bad faith, or fault," a court must assess the following five factors to decide if terminating sanctions should be imposed:

(1) the public's interest in expeditious resolution of litigation;

(2) the court's need to manage its docket;

(3) the risk of prejudice to the party seeking sanctions;

(4) the public policy favoring the disposition of cases on their merits; and

(5) the availability of less drastic sanctions.

*Transamerica Life Insurance Company v. Arutyunyan*, 93 F.4th 1136, 1146 (9th Cir. 2024).

### D.   Willfulness, Bad Faith, or Fault

Applying Ninth Circuit standards, the Court finds that Defendant's conduct establishes willfulness, bad faith, or fault to justify terminating sanctions. *See Transamerica,* 93 F.4th at 1146; *Conn. Gen.*, 482 F.3d at 1096.

As of the filing of Plaintiff's Motion on December 15, 2025, Defendants have not responded to Plaintiff's interrogatories and RFPs served in July 2025. Mot. at 1; Mac Bride Decl. ¶ 4. Defendants have therefore completely failed to follow the Court's September 26, 2026 Order to provide discovery responses to Plaintiff's interrogatories and RFPs by October 10, 2025, which were the subject of Plaintiff's motion to compel. *See* Pl. Mot. Compel (ECF No. 25); 9/26/2025 Order.

As described in more detail above, Defendants' failure to follow the Court's September 26, 2025 discovery order occurred **after** Defendants failed to respond to Plaintiff's discovery requests that were served in July 2025; **after** Defendants failed to respond to Plaintiff's meet and confer efforts in August and September 2025; **after** Defendants failed to participate in an informal discovery conference; **after** Defendants failed to oppose or even respond to Plaintiff's motion to compel; **after** the Court warned Defendants in writing in its September 26, 2025 Order that "[i]f Defendants fail to comply

8

with court orders, or participate in discovery, Defendants may face serious sanctions, including entry of default judgment"; **after** Plaintiff filed his October 27, 2025 status report indicating Defendants had not served any discovery responses; and **after** the Court noted "[i]t appears that Defendants are not participating in the litigation," ordering Plaintiff to file a status report as to how he intended to proceed. *See* Mac Bride Decl. ¶¶ 4-7; 9/26/2025 Order at 5; 10/27/2025 Pl. Status Report; 11/10/2025 Order at 4. In addition to failing to participate in discovery and failing to follow the Court's September 26, 2025 Order, Defendants have failed to comply with the Court's November 10, 2025 Order awarding Plaintiff attorney's fees in bringing the motion to compel. *See* Docket. Further, Defendants have not even responded to Plaintiff's current Motion seeking terminating sanctions, despite the Court's January 21, 2026 Order to Show Cause. *See* Docket.

This record demonstrates Defendants' willful, disobedient conduct and obduracy in refusing to follow the Court's September 26, 2025, November 10, 2025, and January 21, 2026 Orders, refusing to participate in discovery or uphold their obligations under the Federal Rules of Civil Procedure, and refusing to follow the Court's Local Rules, including requirements to meet and confer regarding discovery disputes. *See Transamerica,* 93 F.4th at 1146; *Hester*, 687 F.3d at 1169 (9th Cir. 2012); *Conn. Gen.*, 482 F.3d at 1096; *Adriana*, 913 F.2d at 1411.

To the extent Defendants may argue that this disobedience is from their counsel, this does not save this action from terminating sanctions. Under Ninth Circuit law, "the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client." *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1523 (9th Cir. 1990); *see also Cmty. Dental*, 282 F.3d at 1168; *Irwin*, 498 U.S. at 92. Defendants had the opportunity to respond to Plaintiff's current motion, but failed to file an opposition or even respond. *See RG Abrams Insurance v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 511 (C.D. Cal. 2022) (noting that where civil sanctions are ordered, due process is satisfied where the court provides adequate notice and an

opportunity to be heard) (citing *Paladin Assocs. v. Mont. Power Co.*, 328 F.3d 1145, 1164-65 (9th Cir. 2003) (holding that, because the Rule 37 sanctions issues to be resolved were such that an evidentiary hearing would not have aided the decision-making process, district court did not abuse its discretion by ruling on the briefing)). The Court further notes that Defendants' failure to respond to the Court's January 21, 2026 Order to Show Cause indicates that Defendants' failure to respond to Plaintiff's Motion for terminating sanctions may be construed as a non-opposition. *See* 1/21/26 Minute Order; Local Rule 230(c) ("A failure to file a timely opposition may also be construed by the Court as a non-opposition to the motion.").

Even if the misconduct here is limited to Defendants' counsel, it is Plaintiff who has been substantially prejudiced by this misconduct because Plaintiff cannot assess the case, prepare to prosecute his claims, or prepare for trial where Defendants have completely failed to respond to all discovery requests and stopped participating in this litigation. *See Adriana*, 913 F.2d at 1412. Defendants lack justification or excuse for their continued refusal to participate in discovery since July 2025; to comply with the Court's September 26, 2025, November 10, 2025, and January 21, 2026 Orders; and to respond to Plaintiff's discovery requests. Their prolonged inactivity supports a finding of willfulness, bad faith, or fault as disobedient conduct and substantial and prejudicial obduracy. *See Transamerica*, 93 F.4th at 1146; *Hester*, 687 F.3d at 1169 (9th Cir. 2012); *Conn. Gen.*, 482 F.3d at 1096; *Adriana*, 913 F.2d at 1411.

**E.     Five Factor Test for Terminating Sanctions**

Because the Court has found willfulness, bad faith, or fault, the Court now turns to the Ninth Circuit's five factor test to assess terminating sanctions:

> (1) the public's interest in expeditious resolution of litigation;
>
> (2) the court's need to manage its docket;
>
> (3) the risk of prejudice to the party seeking sanctions;
>
> (4) the public policy favoring the disposition of cases on their merits; and

(5) the availability of less drastic sanctions.

*Transamerica*, 93 F.4th at 1146. "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus the key factors are prejudice and availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)

Applying this five-factor test, the Court finds that terminating sanctions should be imposed. When a court order has been violated, the first two factors are often considered together, and, because "they relate to docket-management issues that the district court is in the best position to assess, [the first two factors] often support the imposition of terminating sanctions." *Transamerica*, 93 F.4th at 1146; *see also Wanderer*, 910 F.2d at 656. Here, "the public's interest in the expeditious resolution of litigation" and "the court's need to manage its docket" each support dismissal. Defendants' failure to engage in even the most basic discovery has delayed this case, resulting in multiple motions and status reports filed by Plaintiff, and requiring the Court to issue multiple orders. In addition, this district court in particular has a strong need and interest in expeditious resolution of litigation to manage its docket, given the extremely high caseload in the Eastern District of California. *See Saetern v. McLane/Suneast, Inc.*, 2026 WL 747295, at *2 (E.D. Cal. Mar. 17, 2026) (issuing terminating sanctions and noting "[t]he Eastern District of California is one of the busiest federal courts in the United States, with among the heaviest caseloads in the nation").

As to the third factor, "risk of prejudice" to the other party, it is clear that Plaintiff is prejudiced by Defendants' refusal to participate in discovery and turn over basic discovery. *See Transamerica*, 93 F.4th at 1147 ("We have generally found that failure to comply with an order to produce specific discovery materials creates a sufficient risk of prejudice to satisfy this factor." (citing *Allen v. Bayer Corp.* (*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*), 460 F.3d 1217, 1227 (9th Cir. 2006))); *Adriana*, 913 F.2d at 1412 ("Failure to produce documents as ordered, however, is considered sufficient

prejudice."); *Comput. Task*, 364 F.3d at 1116-17 (holding that defendant's violation of repeated court orders and failures and delays to produce documents "seriously prejudiced" plaintiff); *Wanderer*, 910 F.2d at 656 (holding that defendants' "repeated noncompliance with court orders to produce documents constituted a clear interference with the plaintiffs' ability to prove the claims and to obtain a decision in the case"). Further, the deadline for completing non-expert discovery was September 30, 2025, and Defendants have refused to participate in discovery for essentially the entire time fact discovery has been open. *See* 1/30/2025 PTSO at 3 (completion of non-expert discovery no later than September 30, 2025).

Although the fourth factor, public policy favoring disposition of cases on their merits, generally weighs against default judgments, "this factor is not dispositive" and "lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *Transamerica*, 93 F.4th at 1157 (quoting *Allen*, 460 F.3d at 1228); *see also Adriana*, 913 F.2d at 1412; *Comput. Task*, 364 F.3d at 1115; *Wanderer*, 910 F.2d at 656.

The last factor, the availability of less drastic sanctions, weighs in favor of default judgment here. A court need not explicitly consider lesser sanctions where, "in light of the defendant's 'willful disobedience,' the district court 'could reasonably conclude that additional lesser sanctions would be pointless.'" *Hester*, 687 F.3d at 1170 (quoting *Comput. Task*, 364 F.3d at 116-17)). Even so, "a district court's warning to a party that his failure to obey the court's order will result in dismissal can satisfy the 'consideration of alternatives' requirement." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *see also Transamerica*, 93 F.4th at 1148 (observing that the Ninth Circuit has identified three subparts to this factor: (1) whether the court has explicitly considered lesser sanctions, (2) whether the court has implemented lesser sanctions before entry of a default judgment, and (3) whether the court has warned the recalcitrant party about the possibility of default judgment).

Here, the Court has already tried less drastic alternatives by providing Defendants

multiple opportunities to confer with Plaintiff, allowing generous time to Defendants to comply with the Court's orders to respond to Plaintiff's discovery requests and pay Plaintiff's awarded Rule 37 expenses, deeming Plaintiff's RFAs admitted, and providing multiple opportunities to respond to this Motion for sanctions, including by issuing an Order to Show Cause why Defendants' failure to file a response to the Motion should not be considered a non-opposition to the Motion. These efforts have met with no success. In light of Defendants' failure to respond to Plaintiff's motions and the Court's orders, which the Court expects will only continue if this case proceeds, the Court finds that further alternative actions, such as issuing adverse inference instructions, monetary sanctions, or treating Defendants' failure to obey the Court's orders as contempt of court, would be pointless. *See Hester*, 687 F.3d at 1170. Further, the Court had expressly warned Defendants in its September 26, 2025 Order that Defendants' failure to participate in discovery or comply with court orders could lead to serious sanctions, including entry of default judgment. *See Ferdik*, 963 at 1262. Thus, the Court finds that default judgment is appropriate notwithstanding the theoretical availability of lesser sanctions.

Having considered all five factors, the Court will enter default judgment against Defendants.[3] *See Transamerica*, 93 F.4th at 1148 (affirming default-judgment sanction where "the district court applied a measured and gradational approach in responding to [the offending party's] non-compliance with the court's orders and the local rules," including providing initial warnings, accepting late submissions and granting benefit of the doubt on the offending party's excuses, ordering further briefing and conferral, and considering lesser sanctions such as monetary sanctions alongside another opportunity to provide discovery responses, and issuing terminating sanctions only after the offending party "failed to perform any of the tasks assigned . . . ."); *Wanderer*, 910 F.2d at 655 (affirming default judgment sanctions where district court found "[s]ince this case

---

[3] The Court denies Plaintiff's request to strike Defendants' answer, *see* Mot. at 5, as unnecessary given the Default Judgment entered below.

was filed, defendants have done nothing, as far as discovery is concerned, in a timely fashion," including "consistently fail[ing] to respond, not only to discovery requests from plaintiffs but also to the orders of this court," and defendants were "given repeated opportunities to comply with this court's discovery orders and thereby avoid entry of default judgment"); *Johnson v. Winterstar LLC*, 2020 WL 5231502, at *2-3 (E.D. Cal. Sept. 2, 2020) (recommending default judgment on Plaintiff's Unruh Act and ADA claims against defendants because "Defendants' complete failure to participate in discovery, and their failure to respond to plaintiff's motions or the court's Order to Show [Cause], compels the conclusion that they have abandoned defense of this case," and recommending damages under the Unruh Act, injunctive relief under the ADA and Unruh Act, and reasonable attorney's fees), *report and recommendation adopted*, 2020 WL 6075755 (E.D. Cal. Oct. 15, 2020).

### F.    The *Eitel* Factors for Default Judgment

Plaintiff argues that the factors for default judgment laid out in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), support entry of default judgment in this case. Mot. at 6-13 (discussing factors). Under *Eitel*, the Court may consider the following factors in its discretionary decision to enter default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72.

However, as explained by the Central District of California, "it would either be redundant or inconsistent to apply *Eitel*'s discretionary factors where default is imposed as a sanction" because "[i]f the *Eitel* factors could somehow compel this Court to deny default judgment despite having already concluded that the entry of default was proper, the result would defy common sense." *Dreith v. Nu Image, Inc.*, 2007 WL 9658786, at *6 (C.D. Cal. Mar. 2, 2007). In addition, the Court is entering default judgment on

14

Defendants, not just directing entry of default, pursuant to the Court's express authority to do under Rule 37. *See* Fed. R. Civ. P. 37(b)(2)(A)(vi) (a court may "render[] a default judgment against the disobedient party"). The Court therefore declines to consider the *Eitel* analysis, which "is essentially rendered moot" by the Court's entry of default judgment. *Dreith*, 2007 WL 9658786 at *7.

### G.      Terms of Judgment

Plaintiff requests default judgment only as to Plaintiff's ADA and Unruh Act claims. Mot. at 9. Accordingly, Plaintiff requests statutory damages in the amount of $8,000, attorneys' fees in the amount of $11,520, costs and litigation expenses in the amount of $3,099.50, and injunctive relief. *Id.* at 20. The Court addresses each in turn.

#### 1.      Statutory Damages

The Unruh Act provides for, among other things, a minimum statutory damages amount of $4,000 per violation. Cal. Civ. Code § 52(a); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides for statutory damages up to a maximum of three times the actual damages but no less than $4,000 for each instance of discrimination"). Plaintiff asserts that because he has established a violation under the ADA, he has established a violation under the Unruh Act and is therefore entitled to $8,000 in statutory damages for the two times he visited the Property on February 7, 2024 and April 24, 2024. Compl. ¶ 12; Mot. at 5-6, 9-11, 13-14.

"Although [California Civil] Code § 52(a) may permit a plaintiff to obtain the minimum statutory damages for each obstructed visit to a facility, a plaintiff cannot simply visit a facility more often to increase the amount of potential statutory damages." *Johnson v. Prithviraj, LLC*, 2019 WL 718117, at *5 (E.D. Cal. Feb. 20, 2019), *adopted in full by* 4/16/2019 Order, No. 2:15-cv-0257-JAM-CKD (ECF No. 14); *Johnson v. Waterloo Enters., Inc.*, 2017 WL 5608110, at *4 (E.D. Cal. Nov. 21, 2017) (same); *Castillo-Antonio v. Mata*, 549 F. Supp. 3d 1050, 1052 (N.D. Cal. 2021) ("[T]here would be serious equitable concerns if a plaintiff could rack up statutory damages by visiting an establishment time and time again before filing a lawsuit to claim damages based on

each and every one of those visits."). In this case, Plaintiff made no showing as to why he returned to the Property a second time after his initial visit. *See* Compl. For example, Plaintiff did not allege that he returned after having received good faith assurances from Defendant or its agents that the architectural barriers were removed. In light of this deficiency, the Court exercises its discretion to award minimum statutory damages corresponding to one visit, i.e., $4,000.

### 2.    Attorney's Fees

The Ninth Circuit affords district courts broad discretion in determining the reasonableness of fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). While the amount of a fee award is discretionary, the district court must "provide a concise but clear explanation of its reasons for the fee award." *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014). The Ninth Circuit utilizes the "lodestar" method for assessing reasonable attorney's fees. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Under the "lodestar" method, the number of hours reasonably expended is multiplied by a reasonable hourly rate. *Id*. Reasonable hourly rates are determined by the "prevailing market rates in the relevant community." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). "[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)). Generally, "the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (quoting *Barjon*, 132 F.3d at 500). Here, the relevant community is Sacramento, California, which is where this district court is located.

Plaintiff seeks $11,520 in attorneys' fees. Mot. at 16. Specifically, Plaintiff seeks $11,520 solely for work performed by attorney Richard A. Mac Bride, for 28.8 hours of legal services at an hourly rate of $400. Mot. at 20; Mac Bride Decl. ¶ 11, Exh. 1.

Plaintiff provides a chart of hourly and sub-hourly work done by attorney Mac

16

Bride from April 29, 2024 to December 11, 2025 for:  initial review of the allegations, reviewing and drafting the Complaint, emailing process servers, emailing private investigators, emailing defense counsel, drafting a joint status report and discovery plan, attending a hearing, conferring with Plaintiff's expert witness and Plaintiff, drafting written discovery, emailing the Court, and drafting this Motion for terminating sanctions and default judgment. Mac Bride Decl., Exh. 1. The Court notes that the hours or fraction of hours listed beside each activity appear to total to 24.8 hours, not 28.8 as listed at the bottom of Plaintiff's billing detail. *See id.* The Court finds that 24.8 hours is a reasonable amount of time for the work completed.

The Court next examines the hourly rates requested. Mr. Mac Bride has been practicing law for 27 years, since 1998, and runs his own law office. Mot. at 18. The Court also finds the hourly rate of $400 for an attorney with 27 years of experience is reasonable in Sacramento and grants counsel's requested $400 hourly rate. *See* Mot. at 18. The Court notes that the requested hourly rate is a lower rate than the rate for attorneys with similar years of legal experience in the relevant community. *See, e.g.*, *Gong-Chun v. Aetna Inc.*, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $490 and $695 per hour for senior counsel and partners).

Accordingly, the Court grants Plaintiff $9,920 for attorneys' fees, assessed by an hourly rate of $400 for 24.8 hours. [4]

### 3.    Costs and Litigation Expenses

Both the ADA and Unruh Act authorize the award of costs for an action. *See* 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). Plaintiff seeks $3,099.50 in costs and

---

[4]   Under Rule 37(b)(2)(C), the Court "must" award reasonable expenses, including attorney's fees, "[i]nstead of or in addition to" other sanctions, caused by the failure to obey the Court's discovery order, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Because the Court awards Plaintiff attorney's fees under the terms of the Court's entry of default judgment, including attorney's fees for bringing this Motion for sanctions as detailed above, the Court finds that Rule 37(b)(2)(C)'s monetary sanctions requirement has been satisfied.

litigation expenses. Plaintiff's description of costs is as follows: "Obtain ownership deed information from assessor's office $150. Private investigator Specialized Investigations $312.50. Court Filing fee $405. Service of process $173 + $173 + $686 (service in Wellington, Nevada). Roberto Cortez, CASp (inspection, and written report) $1,500. Total Costs: $3,099.50." Mac Bride Decl., Exh. 1 at 2-3.

"The party moving for costs bears the burden of demonstrating the reasonableness of each charge; failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery." *Ramos v. Garcia*, 2026 WL 686302, at *5 (E.D. Cal. Mar. 11, 2026) (quoting *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 218 (E.D.N.Y. 2019)), *report and recommendation adopted*, 2026 WL 879811 (E.D. Cal. Mar. 31, 2026). "Filing fees are recoverable without supporting documentation if verified by the docket." *Ramos*, 2026 WL 686302, at *5. "Process server fees are recoverable but must be supported by documentation." *Id.*

Here, Plaintiff has not provided documentation in the form of receipts or invoices for the claimed expenses. The Court can discern from the docket that the $405 filing fee was paid, and that cost will be awarded. No documentation was provided with the request for fees to substantiate the "$173 + $173 + $686" of claimed expenses for service of process. Upon review of Plaintiff's proof of service (ECF No. 5), the Court is unable to identify Plaintiff's basis for including two $173 charges. (*See* ECF No. 5.) Plaintiff also seeks $150 for obtaining deed ownership information from the assessor's office, $312.50 for private investigator's fees, and $1,500 for an inspection and written report by Plaintiff's expert witness. Plaintiff provides no supporting documentation for any of these amounts. Accordingly, the Court grants only the $405 filing fee and denies Plaintiff's request for additional costs.

4.    Injunctive Relief

Plaintiff's Complaint seeks an injunction requiring Defendant to make changes to the Property in a manner that makes the Property readily accessible to and usable by individuals with disabilities. Compl. ¶ 64, Prayer for Relief ¶ 1. Because the factual

allegations in the Complaint are taken as true, Plaintiff is entitled to some injunctive relief. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III.").

**III.   CONCLUSION**

For the reasons set forth above, it is HEREBY ORDERED that:

1.   Plaintiff's motion for terminating sanctions and judgment (ECF No. 31) is GRANTED;

2.   Judgment shall be entered in favor of Plaintiff and against Defendants in the sum of $14,325 as follows:

    a.   $4,000 in statutory damages under the Unruh Act;

    b.   $9,920 in attorney's fees; and

    c.   $405 in costs.

3.   Defendants shall make the following modifications to the business known as Dave's Giant Hamburger, located at 1055 N. Texas St., Fairfield, California (the "Property"), such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, as follows:

    a.   Provide a properly configured, located and identified accessible parking space;

    b.   Provide a properly configured accessible route from the accessible parking space to the entrance of the Property; and

    c.   Provide accessible dining seating at the Property.

    d.   These standards shall be subject to the "readily achievable" standard and susceptible to alternative methods if not "readily achievable."

IT IS SO ORDERED.

Dated:  April 27, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

8, ramo.1261.24.sanc